Our third case this morning is number 16-1021 Hayward Industries, Inc. v. Pentair Water Pool and Spa. Mr. Halpern. May it please the Court, I'm Steve Halpern and I'm here on behalf of the appellant, Hayward Industries. I'm here to talk about three things. Number one, master slave, more particularly why it's in Dichenzo. More particularly, I'm going to talk about the meaning of optimized energy consumption. I'm going to discuss with this court why, if this court does not find in favor of Hayward today, Dichenzo or Ehlers, a remand is essential. The third, I have about one sentence for you on each of a couple claims that were independently argued like 17 and 33 and 44. So first, talking about master slave. You're talking now about Dichenzo? Dichenzo, yes. Regarding the master slave reference in Dichenzo. The only ground that the board found for non-anticipation was that master slave, right? Correct. We submit it's there. Respectfully, APPX 1137 paragraph 164 says that control is to the operating point. There's nothing in Dichenzo to suggest that when there's an operating point, pump's going to do anything differently than that. And when we look at paragraph 160, it's very, very clear that the host is going to provide lots of information, set points and things, but including the operating point to the local pump controller. And then we have this language, alternatively, one or more of the individual controllers could provide the operating point. You know, I'm aware of the evidentiary standard of substantial evidence. I'm aware that there's expert testimony. But the meaning of the word alternatively is really, really clear. And I think that expert testimony has a very big role in patent law. But I don't really think it can stretch the language of the explicit disclosure of a reference so far that the language has been suffered injury. Well, most of their expert testimony was about figure nine. Well, you know. Wait, wait, wait. Figure nine of Dichenzo, which seems to be a different embodiment than figure 17. In fact, Collins himself calls it a separate embodiment and paragraph 160 calls it a separate embodiment. Well, I think that there are different teachings in the reference. And I think that figure nine and figure 17 are different. There's figure nine, there's figure 17. Figure 17 says it's another configuration. And it's understood when you get to figure 17 that everything that has come before it as a reader is antecedent basis and sets up your understandings as a reader. There's a reference to host computers when you're talking about figure nine. And what's interesting is our briefing below. Are you saying that the configuration of figure nine is part of the construction of figure 17? I'm saying that figure nine is a reference to a host computer. And when you get to figure 17, it expands a little bit on how it would interact with a local controller. Well, it's different. 17 is different, right? The optimizer is within the host computer in 17, but not in nine. In 17, the optimizer is shown in the drawing to be at the host. In figure nine, which is expanded out in figure 10, there's shown to be an optimization component that's in the local controller. Why do we care about figure nine? The question is whether figure 17 in connection with paragraph 160 shows a master-slave relationship in a descensa. I think figure nine tells us a little bit about the structure of what we're talking about, about the pump. It's got a local controller. It pumps water. It has sensors in the system and is receiving information. And figure 17 is different in the sense that it's expanding and it's providing more information. Figure 17 is specifically saying... Okay, but let me tell you what your problem is, that Collins in testifying sort of conflated figure nine and figure 17. If they should be considered together, then maybe Mr. Collins had a point. If they're separate, then his testimony about figure nine doesn't have any bearing on figure 17. Well, I think it's fair to consider them different, Your Honor. And I think that in figure 17, they specifically actually come out and say that the operating point can be provided from the host to the local controller and then alternatively... In figure 17, that doesn't carry over to figure nine necessarily. Well, necessarily no. It does not necessarily carry over. But if we look at figure 17 and we look at paragraph 160, we can see the connection there. And I think what happened here is there was some briefing below that was talking about 134 and 160. If you look at the board's opinion in this case, they refer to our reference to alternatively or in combination. And they actually cite paragraph 134. They don't cite paragraph 160. In 134, the paragraph actually starts with alternatively or in combination. And there's a discussion in paragraph 134 about the host. But the argument we presented below and the argument we're presenting here is the alternatively or in combination that's in the middle of the paragraph of 160, which is not the alternatively or in combination that the board cited in their opinion. It's the same alternatively or in combination language. And as laid out in our papers, including but not limited to this diagram on page 11 of our reply brief, it can be very, very clearly seen operating point provided from host to local controller. Alternatively, the local operating point, which is the same language, paragraph 164, which is what they say that's what the control is to. Is your point that 160 and the corresponding example are so clear that it shows a master-slave relationship that it would be impossible to conclude otherwise from de Censo and therefore the board's decision on that point lacks substantial evidence? Pretty much, yes. But I mean, you're getting into it. I mean, so you're asking me to read this on my own without any particularly relevant expert testimony because the relevant expert testimony to me doesn't seem to go to this necessarily and make that determination almost a no-go. Sorry, Your Honor. I'm asking you to trust your judgment about what it means to say alternatively because it's very clearly here. The host can provide the operating points to the local controller. Alternatively, the local controller can... I get that. I can read that. But does the fact that the host may provide operating points and it has efficiency optimization in a box for host computer mean that it has the specific master-slave configuration that's required to anticipate patent? I mean, you say it does. They say it doesn't. I don't know how I can connect that up, particularly on a substantial evidence review. Well, Your Honor, I think the sole basis for the board's reversal is that there was a degree of influence at the local controller. And I think that this is a teaching very clearly here of master-slave. The presence of an additional teaching elsewhere in the reference does not minimize or eviscerate or otherwise take away the presence of the teaching here. The disclosure that the loci of control can be here or here or here does not eviscerate the fact a disclosure has been made that it can be here. I tell you two things. I no less told you the second thing by virtue of having told you the first thing, respectfully. If it's okay, I would talk about optimized energy consumption. We have three different claim constructions here. There's what I'm going to call flow control. There's the special definition of overlapping flows. And then there's the board's construction. The board didn't reach the question of energy optimization with respect to just the SINs up front? They found it to be present there. They just reversed on the grounds of master-slave. They found it to be present? I thought they just didn't discuss it at all. Your Honor, I would have to double-check that. I think that their issue with the CHENZO was solely the master-slave issue. Yeah, but they didn't go on to say that the CHENZO discloses energy optimization. I believe that you're correct. Thank you, Your Honor. Thank you. But with regards to optimized energy consumption, they did discuss it with respect to Ehlers. The Ehlers reference, which discloses a master-slave. If we were to agree with you on master-slave, wouldn't we have to send it back to the board for a determination about the CHENZO and energy optimization? No, because I think the CHENZO discloses all the claim constructions that the parties are advocating here. But has the board ruled on that? Has the board ruled on optimizing energy consumption? On the substantial optimizing energy consumption. I think that your colleague was saying that they relied solely on the master-slave for... So they didn't reach the other question. On optimized energy consumption, they addressed it with respect to Ehlers. But not with respect to CHENZO? Not explicitly, Your Honor. So the question is, if we were to agree with you on master-slave, we would have to send it back to the board on optimization, right? That's not unreasonable, Your Honor. With respect to optimized energy consumption, if I may, there's three definitions. Flow control, this idea of having a set point or an operating point on the flow itself, so that you're watching the flow rate or the pressure, and you're instructing the intermediate variable of speed to achieve the desired impact on the flow. This construction is understood from the notice of allowance to the ex parte examiner. It was presented in the re-exam request. It was adopted in the first office action. In the second office action, which is also referred to as the first ACP, the examiner found a special definition in the specification of the 597 patent, and withdrew the rejections that had been previously adopted to many, many, many, many rejection sets. Later on, I'm going to fast forward to the RAN. In the RAN, at page 160, the examiner says that he agrees with the claim construction presented by the patent owner, which is reduction of the energy over time relative to the ultimate pumping application or function, but nevertheless continues to have rejections withdrawn to lots and lots of prior art. A classic example of a very, very narrow definition used to eliminate references. And then later, a different, broader claim construction adopted without being reapplied. And the perfect example of this is in the RAN at APPX 15904, APPX 15905. Just one example, where in the RAN itself, proposed rejection 80, the claims had previously been rejected over Jones in view of the Danfoss manual, and the rejection is withdrawn. Neither Jones or the Danfoss manual are seen to teach optimizing energy consumption as claims, which is seen to have a special definition for optimized energy consumption. Then there's a reference to where in the patent this special definition is found, and it says, there's no teaching in Danfoss or Jones of overlapping the required flows from various functions to avoid unnecessary flow. This overlapping flows requirement is explicitly over and over and over again in the RAN, and the second ACP used to toss all these references that had previously been adopted and formulated as part of rejections the examiner was being applied. And then when the claim construction changed to this reduction over time relative to the ultimate function, that wasn't revisited. And what's interesting is there's a problem with this construction, because what does the ultimate pumping or function actually mean? It can move depending on how it's being framed, and how it's being abstracted out to greater levels of detail, or bringing the zoom lens back. But the thing is that even if this court was to find that that's the proper construction, our construction of flow control is both an example of that construction and a lowest common denominator. What do I mean by that? Number one, if you have flow control, if you have a reference that teaches what we're talking about, that's an example of a reduction of the energy over time relevant to the ultimate function. If you had an old pump and you were going to just throttle it super fast all the time to make sure you got the flow rate of the pressure you needed, well, having flow control, where you keep the speed as low as possible on a feedback loop, is going to reduce your energy relative to that. And that's in all of these references. It's also a lowest common denominator of the construction, because if you don't know what the flow is, how can you get the flow that you want? Again, the flow of the water is what's important. Sending an instruction to the motor to run at a speed is but one intermediate step in the process. There could be a lot going on in the pool that changes that. Your Honor, so we need, we ask for some guidance on the meaning of this term. I'm out of time. Mr. Hopper, your time has expired. We'll give you two minutes for rebuttal. Thank you, Your Honor. And may it please the Court. I look at the Board's decision. It doesn't really discuss Paragraph 160 at all. It does cite to Collins' expert testimony. Collins, at one point, cites Paragraph 160, but he really doesn't discuss it. What is it that supports the Board's decision here? We have to find it in Collins, don't we? It isn't, as Your Honor just stated. If you look at the Board's citation to Hayward's expert... Answer my question. The only support is in Collins, right? Support for... The Board's decision that Desenzo doesn't teach master slack. The Board cited Imati, then Collins, and then came to its own conclusion. So the Board discussed initially Desenzo. Imati's the other side's expert. Imati's the other side's expert. But in order to support their finding, we have to find it in Collins, right? Yes. Okay. So where is it in Collins? I find in Collins a lot of discussion of Figure 9, but Figure 9 is different. We have Paragraph 160 of Desenzo and Figure 17. Where does Collins say that those don't show master slack? Well, Your Honor, first I would say you don't have to find it in Collins. The Board looked at Desenzo itself and did not find on the disclosure of Desenzo. They didn't even discuss Paragraph 160. Well, then they cited to Imati, which if you look at that site, he cites to 160... Let's talk about Collins. Show me where Collins says that considering Paragraph 160, it doesn't show master slack in conjunction with Figure 17. Your Honor, it's what the Board cited. Now, I want you to show me a page. A page? I want you to show me the testimony because I've read Collins and I didn't find that in Collins. Appendix 15, 160, Paragraph 36. That's where Dr. Collins cites Desenzo 160. Which volume is this in? Appendix 15160. What volume? The third, I believe. I'm sorry, say the page number again. Appendix 15160. Yeah, maybe volume 5. Oh, it's 5? 4, rather. 15160? 15160, Paragraph 36. Okay. So he says that it shows the host supplying the set points to the pumps or whatever. And then he goes on to say Desenzo does not disclose or receive from the host computer even if optimized by the controller and optimization component 960 would lose independent control. In other words, he's saying it shows that the host provides the set points but it doesn't say explicitly that there's a loss of independent control, right? Right. He's saying there's no disclosure in Desenzo of the local controller being a slave to the host. How can that be consistent with the language of Paragraph 160? Well, I think that's a good point, Your Honor. If you look at Paragraph 160, it doesn't say what Hayward thinks it says. And I'll refer to what Mr. Halpern was referring to on page 11 of Hayward's reply brief. If you look at the actual language of Paragraph 160 and even how they annotate it, you'll just look at the language. The language says providing, providing desired, or providing information, not controlling, regarding Hayward's first teaching. What page of the reply brief is that? Page 11, Your Honor. So is your reading of this, I mean, based upon your expert assessment, I guess, that providing set point information is not the same thing as a master-slave relationship? Correct. God, I wish you guys would have used a different language than master-slave when you just described these designs. But this, your reading of Paragraph 160 is that it provides set point information and then your expert says, but that doesn't mean the independent controllers can't still project it. Right, it's providing information, it's providing desired operating points, but in every instance, in 160 and throughout Desenzo, the local controller then takes that information and makes its own determination. But this is not what it says. It says whereby an efficiency optimization component in the host computer may determine desired operating points. And it says alternatively, one of the individual controllers may determine the operating points. Doesn't that suggest that in the first description, that it's the host computer that, quote, determines the desired operating points? No, Your Honor, it's the language itself, may determine desired operating points. And then the alternative language is really saying that the local controller retains control. The local controller can listen to the host computer? Take the line that says whereby the host computer may determine desired operating points. Doesn't that suggest that it is determining the desired operating points? Desired operating points that then, based on other information, the local controller can change and come to its own desired operating points. Where does it say that? Later on, and alternatively, that's the alternative language. But alternatively suggests that, alternatively, maybe the host computer doesn't determine the operating points. We read, and I believe the Board read, 160, that the alternative language suggests... The Board didn't discuss 160. Well, through the discussion of Collins, the citation of Collins, but we read the alternative language is actually saying that the local pump controller can take the information from the host computer, it can listen to it, it can make its own decision, it can, in combination... Alternatively, instead of being told by the host computer what to do, it may make the determination itself. Nowhere in 160 does it say the host computer tells the local controller what to do. And the language is important here. It talks about host-to-peer, not master-slave. It talks about providing information, not commanding. It says whereby an efficiency optimization component may determine. How does that not say it's determining the desired operating points? Desired operating points. It's not the actual end signal or operating point. And, I mean, at worst here, you have two different interpretations of the disclosure. And under this Court's case law and synopsis of Ementor Graphics and Qualtrics, that is when the Board makes that determination. And, in fact, the Board, in its decision, credited Dr. Collins' testimony over Dr. Amati. So the Board hit this issue head-on, disagreed with Hayward, agreed with Pentair. And in that scenario, even when there is another maybe plausible reading, that is still the epitome of a decision that should be upheld. I think it's hard to say that the Board hit this issue head-on when it really didn't discuss the very issue we've been debating. Well, this goes to, I think the record is there, Your Honor, but this goes to Hayward takes issue with the Board's decision, ignoring the fact that the Board was merely responding to how these issues came to it. And you talked about Figure 9 and 17 earlier, and this confusion over whether they need to be together or not. And Hayward is saying the Board somehow erred by making it mandatory that they're together. Well, why did the Board address this issue the way it did with Figures 9 and 17 in the decision? Because if you look at the record, that's exactly what Hayward argued. It argued Paragraph 160, right? It argued Figures 9 and 17. And it argued Paragraph 160. Where did Hayward argue Paragraph 160? Besides the embedded citation to Dr. Amati that is talking... Your suggestion is they never argued Paragraph 160 to the Board? Not in the way they're arguing it now. And to the extent they did, they did so at the generic level that the Board was arguing it. Did they argue it or didn't they argue it? Not in the way it's in the appeal brief, Your Honor. I'm looking at there, page 11. And I'm not seeing record citations. I would, unless Your Honors have more questions on Paragraph 160. Again, two alternative potential readings. The Board decided one in favor or over the other. That's substantial evidence. But I would like to address, in my time remaining, the optimizing energy consumption arguments made by Hayward. And there, Your Honor, Hayward's main argument is that somehow the construction changed over time by the examiner. And that's just a non-issue. The Board didn't reach that issue as to descenda, right?  Optimizing energy consumption, the Board was silent. As to descenda. So if we were to disagree with you on master-slave, we'd have to send it back on the optimization. For factual finding, yeah. But the shifting construction argument is a non-issue. The bottom line is the examiner construed the term, the Board reviewed it, and adopted that construction. That's all that's required. And maybe even more clearly, if you look at the record, Hayward made this shifting construction argument to the examiner. And the examiner, at appendix 15078, stated the definition in this proceeding is not seen to contradict any earlier definition. And then the examiner went on, in appendix 15432 to 15433, to say that it had addressed, it didn't change its mind about any of its prior findings, factual findings on the scope of the art, based on this definition. So the shifting construction argument is just a non-issue. Hayward was then arguing some blanket rule that the language construed by the examiner, under, I believe, a case that's cited in its reply, Geneva, because it's functional language, somehow it has to mean, in this circumstance, any pumping system that optimizes energy consumption under any circumstance. And there is no such blanket rule in the law. This case is much more akin to star scientific that we cited in our brief. In Geneva, it was an indefiniteness case. And the court was concerned that, in that case, it dealt with a pharmaceutical composition, that that pharmaceutical composition, in one instance, would infringe, and the identical composition, in another instance, would not. And that's simply not the case here. We're not talking about identical pool systems. One would infringe, one would not. We're more like star scientific, where there the court acknowledged you can have functional construction that is, in fact, relative to some baseline. In that case, it was curing tobacco, a method for curing tobacco, and the claim language was defined as being relative to conventional methods for curing tobacco. Here, the optimized energy consumption can be relative to the ultimate pumping application or function. So the term is known with reasonable certainty to one of skill in the art. Are there any other questions? Thank you. I'll open here for two minutes. Thank you, your honors. Did you argue paragraph 160 to the board? Yes, we did. Everywhere. Everywhere doesn't do it. You're sitting there. If you're hearing the questions, you should figure out where you argued it. Well, I wrote down the site to address this first point. May I do that while my colleague is looking up the site? He was discussing APPX 15160, the expert declaration, three pages earlier in paragraph 27. Master-slave relationship requires that the master has complete control over a variable in order to be the master with respect to that variable. The variable we're talking about here is the operating point. Paragraph 164 says this is the point at which the system is run. What could be more important than the operating point? This is the point that the system is going to be run. It's in paragraph 164 of DiCenzo. If we go back to paragraph 136, what does the expert actually say? However, DiCenzo doesn't disclose that if set points or desired operating points are received from the host, even if optimized at the remote location at 1706, the controller and its optimization component would lose independent control. It doesn't cross-reference to that definition of master-slave. The expert said it would lose independent control. When we actually look at paragraph 27, it's complete control over one variable. That's the position the expert has taken. The operating point can be provided by the host to the local controller. Alternatively, the local controller can define the operating point. Don't need an expert. It's not a battle of the experts because when a reference is black, experts can't fight over whether it says white. It's right there. Regarding this shifting sands... You're out of time. Do you have the site? Do you mean to the board itself? Yes. In the worst case, I can get it to you before lunchtime tomorrow. I'm going to look for it right now. Why don't you supply it in a supplemental letter tomorrow?